UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

HILDRETH REAL ESTATE ADVISORS LLC,

                      Plaintiff,

      -against-

FELIPE GALVIS and FORTITUDE VENTURES III
LLC,

                      Defendants.

-----------------------------------------------------------------X

**Case No.: 1:23-cv-09372-DEH**

<u>**COMPLAINT**</u>

Plaintiff Hildreth Real Estate Advisors LLC ("HREA" or "Plaintiff"), by its attorneys Milman Labuda Law Group PLLC, as and for its Complaint against Defendants Felipe Galvis (hereinafter "Galvis") and Fortitude Ventures III LLC (hereinafter "Fortitude") (collectively hereinafter the "Defendants"), hereby alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      This is an action for damages and injunctive relief related to Defendants' misappropriation of Plaintiff's confidential information, resulting in their violation of or engagement in: (i) the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (ii) misappropriation; (iii) tortious interference with contractual relations; (iv) conversion; (v) defamation; and (vi) breach of fiduciary duty.

2.      Specifically, Defendants must be prevented from utilizing Plaintiff's confidential information and trade secrets stolen by the Defendants, which is being done to decimate and harm Plaintiff's business.

3.      In addition to being enjoined from their conduct, which threatens Plaintiff's business, Defendants must pay for damages for the harm they have caused to Plaintiff's business.

## PARTIES

4.       HREA is and was at all times relevant a domestic limited liability company duly organized under the laws of the State of New York with its principal place of business at 155 East 55th Street, New York, New York 10022.

5.       HREA is a real estate investment company.

6.       Fortitude is and was at all times relevant a limited liability company duly organized under the laws of the State of Floria with its principal place of business at 1130 Reserve Way, Unit 105, Naples, Florida 34105.

7.       Galvis is and was at all times relevant the principal and/or member of Fortitude, and resides at 17262 Boca Club Boulevard, Apt. 2407, Boca Raton, Florida 33487.

## JURISDICTION AND VENUE

8.       This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 given that Plaintiff pursues claims under the DTSA, which is a federal law.

9.       This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 given that Plaintiff is a citizen from a different state than Defendants and the amount in controversy exceeds $75,000.

10.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims against Defendants because they are part of the same case or controversy and arise under a common nucleus of operative facts.

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS

12.      In or about August 2022, HREA engaged Defendants to develop investor

presentations for various real estate projects in New York, New York and other locations within New York.

13.     During their work arrangement, Defendants had access to HREA's emails, investor contact information, proprietary company models and addresses.

14.     In or about September 2023, HREA terminated its work arrangement with Defendants for poor work performance.

15.     Galvis demanded certain payments from HREA, which it refused to do as Defendants, who were paid per project, had been fully paid for their work.

16.     As a result, Galvis threatened to defame HREA and share its confidential information.

17.     Galvis then proceeded to defame HREA and took its confidential information, including the names and contact information for investors.

18.     In correspondence from Galvis to HREA dated October 9, 2023, Galvis demanded payment by HREA in the amount of $138,680.00 and stated that this "offer" would expire by October 15, 2023.  Galvis also stated that he intended thereafter to contact various government agencies to "denounce" HREA's alleged failure to withhold and pay tax and misclassify employees as contractors.

19.     On October 11, 2023, in an email to HREA's counsel, Galvis stated that he is free to inform, *inter alia*, "investors, partners, whoever else I wish of HREA's misclassification of employees and consequent failure to pay payroll tax, insistence of running the firm without working capital resulting in recurring late payments to misclassified employees and vendors, toxic use of 'feedback' exclusively on payment days as a poorly-conceived cost minimization strategy, among other problematic issues."  Galvis stated that he would make this information public and

report it to the proper authorities, and the "court of public opinion" would decide.

20.    On October 18, 2023, Galvis forwarded his aforementioned October 11, 2023 email to HREA's investors.

21.    On October 12, 2023, Galvis sent an email to a third party, advising that David Shorenstein, principal of HREA, "present a problematic pattern that the public and proper authorities should know about to protect others from what I have experienced."  Galvis also advised the third party that he had "recorded our meetings and downloaded every single email and text message communication between me and any parties related to HREA and saved them in multiple computers and drives, some digital and some physical, all of them distributed in a network of safe deposit boxes in the United States and Latin America."

22.    On October 14, 2023, the third party responded to Galvis, offering to help get him in touch with a journalist to work on a piece, presumably about HREA.

23.    On October 19, 2023, Galvis forwarded to HREA the aforementioned correspondence, to and from the third party.

24.    Galvis knew that the above correspondence to HREA's attorney and to the third party was false.

25.    Defendants expressly communicated these false statements to investors in order to damage HREA's business and tarnish its reputation.

26.    HREA's contact information for its investors is confidential and proprietary, and took great costs and efforts to create, including years of developing relationships with investors.

27.    Defendants' conduct constitutes a violation of the DTSA and related state law common claims for misappropriation of trade secrets.

28.    HREA went through painstaking efforts, time, and money to build its business and

brand to what it is today.

29.    HREA has spent years cultivating relationships with its investors and contacts in the industry, and Defendants have sought to exploit this information through improper means.

30.    HREA's carefully curated investor relations are vital to its business; Defendants misappropriated that information in violation of the law.

31.    This confidential information and these trade secrets provided HREA a unique competitive advantage, which has been stripped of by Defendants' unlawful acts.

32.    HREA took many reasonable measures to keep its confidential information secret, including restricting access of this information and maintaining it in a secured program protected by appropriate safeguards, and related resources.

33.    The confidential information derives independent economic value from not being generally known to, and not being readily ascertainable through, proper means from others who could otherwise obtain economic value from the disclosure or use of the information.

34.    This confidential information is related to services used in and intended for use in interstate commerce because HREA performs work outside of the State of New York in the regular course of its business.

35.    Defendants knew and had reason to know that the trade secrets and confidential information they obtained – including investor lists – were acquired by improper means and used for improper ends.

36.    Defendants misappropriated such confidential and trade secret information by engaging in theft; no permission was given to Defendants to utilize HREA's investor list for any purpose except for the benefit of HREA.

37.    It is obvious from Defendants' brazen tactics that they are actively engaged in a

scheme to plunder and destroy HREA.

38. Immediate injunctive relief and a permanent injunction is necessary to prevent Defendants from destroying the investor relationships, brand, and goodwill that HREA has spent years building, and causing further imminent and irreparable financial harm to HREA.

## AS AND FOR ITS FIRST CAUSE OF ACTION
**(Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 – All Defendants)**

39. Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

40. Defendants' actions, as set forth herein, constitute misappropriation under the DTSA, 18 U.S.C. § 1836.

41. Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its investors, contact information, and details related to investors.

42. Plaintiff made and makes reasonable efforts to maintain the secrecy of this information.

43. Defendants had no authority to utilize confidential information and trade secrets of Plaintiff.

44. The confidential information and trade secrets belonging to Plaintiff that Defendants possess derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

45. Defendants knew that this information contained confidential information and trade secrets belonging to Plaintiff.

46. Defendants have no right to retain or use any of Plaintiff's trade secrets or other

confidential and proprietary information due to their illegal conduct.

47.     Upon information and belief, Defendants are retaining and using Plaintiff's confidential information and trade secrets to injure Plaintiff.

48.     Plaintiff did not consent to Defendants' use of the information as set forth above.

49.     At all relevant times, Defendants knew that the information obtained by them contained Plaintiff's proprietary trade secrets that they had no right to receive and could not receive absent their improper acts.

50.     Defendants' conduct thus constitutes knowing, willful, and malicious misappropriation.

51.     Defendants have used Plaintiff's confidential information and trade secrets to damage its relationships with its investors and the potential obliteration of its brand.

52.     Defendants have wrongfully acquired and used Plaintiff's confidential information and trade secrets and continue to do so, without the express or implied consent of Plaintiff, for Defendants' own benefit and the benefit of others.

53.     The public policy in favor of protecting Plaintiff's interest in maintaining its trade secrets outweighs any interest Defendants could have in using Plaintiff's confidential information and trade secrets.

54.     As a direct and proximate result of Defendants' misappropriation of Plaintiff's confidential information and trade secrets, Plaintiff has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage including, without limitation, the loss of its brand recognition and goodwill with its clients, and will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their continued misappropriation of confidential information and trade secrets.

## AS AND FOR A SECOND CAUSE OF ACTION
### Injunctive Relief under the DTSA (18 U.S.C. § 1836, *et seq.* – All Defendants)

55.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

56.    Plaintiff operates its business in interstate commerce, and the trade secrets misappropriated by Defendants are related to, and intended for use in, interstate commerce.

57.    As set forth above, Defendants improperly acquired Plaintiff's trade secrets, including information regarding Plaintiff's investors and other confidential business and/or financial information that was secret, valuable in the industry.  The aforementioned information qualifies as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839(3).

58.    Furthermore, Plaintiff has taken reasonable measures to keep such information secret.

59.    The trade secrets misappropriated by Defendants include those which required substantial resources, time, and investment by Plaintiff to create and/or develop, and thus derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information.

60.    Defendants' misappropriation of Plaintiff's trade secrets has caused Plaintiff to suffer harm, including but not limited to loss of reputation, damage to their brand, and investor goodwill, and loss of the confidentiality of, and investment in, its trade secrets.

61.    This harm cannot be adequately remedied at law and requires permanent injunctive relief.  Plaintiff will suffer irreparable and imminent harm in the absence of a permanent injunction; Defendants' continued misappropriation of Plaintiff's trade secrets and failure to return Plaintiff's documents containing Trade Secrets, including Plaintiff's investor information, will cause Plaintiff further loss.

62.     This imminent injury is neither remote nor speculative, because Plaintiff has already been harmed in precisely this manner by Defendants' misappropriation and use thereof, and will continue to be irreparably harmed in the absence of a permanent injunction.

63.     Defendants will not suffer harm from the rightful return of Plaintiff's proprietary information and trade secrets, and will not be prevented from conducting their ordinary business by lawful means.

64.     Defendants will merely be prevented from continuing to gain an unfair and unlawful advantage at Plaintiff's expense.  The ongoing, continuing and future harm to Plaintiff cannot be adequately remedied at law and requires permanent injunctive relief.

65.     The public interest would not be disserved by the issuance of an injunction preventing Defendants from misappropriating Plaintiff's Trade Secrets.

66.     Accordingly, Plaintiff is entitled to an injunction, pursuant to 18 U.S.C. 1836(b)(3)(A), enjoining Defendants from continuing to use Plaintiff's trade secrets, in order to prevent continued actual and threatened misappropriation of Plaintiff's trade secrets, and requiring Defendants to return and/or destroy the trade secrets improperly accessed and retained by Defendants, pursuant to 18 U.S.C. 1836(b)(3)(A)(ii).

### AS AND FOR A THIRD CAUSE OF ACTION
**(Misappropriation – All Defendants)**

67.     Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

68.     Defendants' actions, as set forth herein, constitutes misappropriation under New York law.

69.     Defendants currently possess information belonging to and used in the operation of Plaintiff's business, which information constitutes confidential, proprietary and trade secret

information under New York law.

70.     Such information was developed by Plaintiff through great effort and expense, in terms of manpower, time, and costs, and is extremely valuable to Plaintiff, as it is crucial to the operation of its business, cannot be easily acquired or duplicated by others, and, if made available to others, would enable competition with Plaintiff to its detriment.

71.     Plaintiff makes reasonable efforts to maintain the secrecy of this information.

72.     Upon information and belief, Defendants knowingly and improperly obtained and used such trade secrets and confidential information for their own benefit.

73.     The improperly retained information constitute trade secrets and Defendants' actions pose a real and actualized risk that they will and have misappropriated these secrets by using the information to their advantage or for their own personal economic gain and with the willful and malicious intent to injure Plaintiff's business and brand.

74.     As a result, Plaintiff has suffered direct and consequential damages, and is entitled to recover compensatory damages, including punitive damages in an amount to be proven at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Tortious Interference – All Defendants)**

75.     Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

76.     Plaintiff has entered into valid written agreements with its investors concerning its business.

77.     Defendants were at all relevant times aware of these agreements between Plaintiff and its investors.

78.     Upon information and belief, Defendants communicated with Plaintiff's investors in order to induce them to cease working with Plaintiff.

79.    Defendants' conduct has caused Plaintiff injury to Plaintiff's brand and reputation with its investors.

80.    Defendants' conduct constituted extortion under New York Penal Law § 155(2)(e).

81.    As a consequence of Defendants' acts to induce Plaintiff's investors to cease working with Plaintiff, it has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.  Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive damages and/or exemplary damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Conversion – All Defendants)

82.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

83.    Plaintiff has a possessory right and legal ownership to the confidential information and trade secrets referenced herein.

84.    Defendants exercised unauthorized dominion over Plaintiff's confidential information and trade secrets.

85.    Defendants willfully exercised unauthorized dominion over Plaintiff's confidential information and trade secrets to the detriment of Plaintiff.

86.    Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets was and is to the exclusion of Plaintiff's rights.

87.    Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets constitutes conversion.  Defendants have thus committed the tort of conversion under New York common law.

11

88.     As a result, Plaintiff has suffered direct and consequential damages, and is entitled to recover compensatory damages, including punitive damages in an amount to be proven at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Defamation - All Defendants)**

89.     Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

90.     On October 18, 2023, Galvis forwarded a communication with Plaintiff's attorney to multiple investors of Plaintiff, stating that Plaintiff intentionally breaks multiple tax and employment laws, improperly runs its business by inadequately capitalizing its transactions, and provides toxic feedback on payment day as a "poorly-conceived cost minimization strategy, among other problematic issues."

91.     Galvis knew that these statements were false.

92.     Defendants expressly communicated these false statements to investors in order to damage the Plaintiff's business and tarnish its reputation.

93.     On October 11, 2023, Galvis stated that he was free to publish his allegations to whomever he willed, and the "court of public opinion" would decide.

94.     Galvis has no privilege to make his statements to the relevant investors.

95.     Galvis maliciously made such statements.

96.     Galvis's own words above evidence an intent to injure Plaintiff's reputation.

97.     Moreover, Galvis's strategy to provide false statements to investors was directly targeted at coercing Plaintiff to tender payment to him for disputed invoices.

98.     Defendants' statements prejudice Plaintiff in deterring investors from conducting business with it.

99.     Plaintiff has been and continue to be damaged by these statements.

100.    As a proximate and direct result of the Defendants' statements, Plaintiff has suffered and continues to suffer significant reputational and monetary injury in amounts to be proven at trial.

### AS AND FOR A SEVENTH CAUSE OF ACTION
#### (Breach of Fiduciary Duty- All Defendants)

101.    Plaintiff incorporates by reference each of the foregoing allegations as though fully set forth herein.

102.    Prior to the termination of their work arrangement with Plaintiffs, Defendants acted in a position of trust and confidence as an agent for Plaintiff.

103.    Both during and after their work arrangement with Plaintiff, Defendants owed certain fiduciary duties to Plaintiff, including but not limited to, a duty of loyalty and honesty. By virtue of these duties, Defendants were and are prohibited from acting in a disloyal manner, or in any way inconsistent with that trust relationship.

104.    Defendants were bound not to act contrary to Plaintiff's interests during and after their work arrangement with Plaintiff.

105.    Notwithstanding these obligations and duties, and in violation thereof, Defendants has engaged has engaged in and/or will inevitably engage in, *inter alia,* the following disloyal and untrustworthy conduct: Defendants interfered with Plaintiff's investor relationships and used confidential investor information in order to cause financial harm to Plaintiff.

106.    As a consequence of Defendants' foregoing intentional breaches of their fiduciary duties to Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages and interest in an amount as the proof at trial may warrant, and punitive damages as proof at trial may warrant.

### DEMAND FOR JURY TRIAL

107.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor as against Defendants as follows:

a.    Compensatory damages, including but not limited to, lost profits, and – to the extent calculable – damages for reputational damage, lost investors, lost relationships, lost revenue, loss of goodwill, corrective advertising, and all other available damages in no less than $1,000,000.00;

b.    Injunctive relief restraining and enjoining Defendants from further violations of the DTSA, including the use of confidential information or trade secrets of Plaintiff;

c.    Injunctive relief restraining and enjoining Defendants from having any contact with Plaintiff's current and/or former investors;

d.    Ordering that Defendants return all of Plaintiff's confidential and proprietary information, including a forensic examination of all of Defendants' computing devices, cellular phones, and cloud storage sites;

e.    Punitive and exemplary damages in an amount to be determined at trial in this case;

f.    Interest (pre-judgment & post-judgment);

g.    Equitable relief in the form of the imposition of an injunction, constructive trust, accounting, and a disgorgement of profits and other benefits received by reason of the unlawful conduct complained of herein;

h.    Ordering that Defendants pay the costs of suit, including attorneys' fees; and

i.    Such other and further relief as this Court deems just, equitable, and proper.

Dated: Lake Success, New York
       October 24, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____

Joseph M. Labuda, Esq.
Netanel Newberger, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
netanel@mllaborlaw.com

*Attorneys for Plaintiff*
*Hildreth Real Estate Advisors LLC*